IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01615-PAB-MEH

JOSEPH HOLT,

Plaintiff,

v.

JOICE CHRUNK,
DR. JOSEPH WERMERS,
DR. KATHY MCBRIDE,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Before the Court is Defendant Dr. Joseph Wermers's Motion to Dismiss [filed March 9, 2012; docket #45]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #46]. Plaintiff filed a response to the Motion on March 23, 2012 [docket #49]. Defendant Wermers did not file a reply. Oral argument would not materially assist the Court in its adjudication of the pending Motion. Based on the record contained herein, the Court RECOMMENDS that Defendant Dr. Joseph Wermers's Motion to Dismiss be **granted**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

**BACKGROUND**

**I. Facts**

Plaintiff is a state prisoner incarcerated at Colorado Territorial Correctional Facility ("CTCF") in Canon City, Colorado. (Docket #13.) Plaintiff alleges on January 5, 2005, he was prescribed medications for the treatment of an HIV infection and Diopathic Progressive Polyneuropathy. (*Id*. at 2.) Plaintiff claims that his medications induce sedation and heavy sleeping. (*Id*.) Because Plaintiff had difficulty managing the ladder to the top bunk, Plaintiff requested and received a lower bunk restriction. (Docket #1 at 15.) On October 30, 2006, Provider Christine B. Miller prescribed Plaintiff additional medications and continued his lower bunk restriction. ( Docket #13 at 2.)

In October 2007, Plaintiff was transferred from CTCF in Canon City to San Carlos in Pueblo, Colorado for two and a half years. (*Id*.) Although Plaintiff remained on a lower bunk restriction for approximately two years after his arrival at San Carlos, Defendant Wermers allegedly removed Plaintiff's lower bunk restriction on November 24, 2009. (*Id.*) According to the Ambulatory Health Record created that day, Dr. Wermers found that Plaintiff did not have a mobility disability necessitating an accommodation "[p]er ADA/Montez." (Docket #1 at 17.) In accordance with this finding, Dr. Wermers determined that continuing the lower bunk restriction "provided as temporary in 2006" was not justified. (*Id*.)

In the absence of this restriction, Plaintiff was assigned a top bunk upon his return to CTCF on January 20, 2010. (Docket #13 at 2.) Two months later, on March 16, 2010, Plaintiff allegedly

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

fell from his top bunk and sustained injuries to the side of his forehead. (*Id*. at 4.) Specifically, Plaintiff suffered a cut that measured approximately three fingers wide and a half inch deep. (*Id*.) According to previous letters Plaintiff submitted, Plaintiff continues to fall out of his top bunk. (Docket #38.) As a result of these falls, Plaintiff's response to the pending motion alleges the entire left side of his head is numb, he has broken every bone surrounding his left eye, and he is "permanently scarred on [his] left side." (Docket #49 at 2.)

**II. Procedural History**

On June 20, 2011, Plaintiff, proceeding *pro se*, initiated this action by filing a Complaint pursuant to 42 U.S.C. § 1983. (Docket #1.) On October 20, 2011, at the direction of Magistrate Judge Shaffer, Plaintiff filed an Amended Complaint. (Dockets ##11, 13.) Although Plaintiff filed his Amended Complaint after the 30-day deadline set forth in Magistrate Judge Shaffer's Order [docket #11], Plaintiff was permitted to amend as a matter of course pursuant to Fed. R. Civ. P. 15(a) because Defendants had not yet been served. (*See* docket #16.)

Plaintiff's Amended Complaint asserts two claims under the Eighth Amendment against J. Shoemaker, Dr. Franze, Dr. FishdePena, Joice Chrunk, Dr. Joseph Wermers, Dr. Kathy McBride, Srg. Buena Vida, and Officer DeGroot. (Docket #13.) In essence, Plaintiff argues that Defendants violated his Eighth Amendment rights by removing his lower bunk restriction at a time when Plaintiff was under the influence of sedative medications. (*Id.* at 2) As relief, Plaintiff seeks compensatory and punitive damages, preliminary and permanent injunctions ordering Defendants to provide Plaintiff with proper medical care, and a declaration from the Court that Defendants violated Plaintiff's rights. (*Id* at 5-9.)

On December 19, 2011, Defendants Shoemaker, Franze, FishdePena, Chrunk, Buena Vida,

and DeGroot (the "CDOC Defendants") moved to dismiss Plaintiff's Amended Complaint. (*See* docket #24.) Instead of filing a response to the motion, Plaintiff filed a letter asking the Court to dismiss Defendants Shoemaker, Franze, FishdePena, Buena Vida, and DeGroot from this case. (Docket #31.) The Court construed the letter as a Notice of Dismissal pursuant to Rule 41(a)(1)(A) and dismissed Plaintiff's claims against the identified Defendants without prejudice. (Docket #36.) Thus, the Court limited its analysis of the CDOC Defendants' motion to Defendant Joice Chrunk, and ultimately recommended the District Court dismiss Plaintiff's claims against Defendant Chrunk accordingly. (Docket #48.) The recommendation of dismissal remains pending before Judge Brimmer.

On January 30, 2012, the Court directed the U.S. Marshal's Service to serve process on Defendant Wermers. (Docket #39.) In accordance with this order, Defendant Wermers was served on February 17, 2012. (Docket #41.) In lieu of an answer, Defendant Wermers filed the present Motion to Dismiss.

## LEGAL STANDARD

### I. Dismissal Under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 652, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* *Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal

conclusions, bare assertions, or merely conclusory. *Id.* at 1949-51. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 1950.

**II. Dismissal of a Pro Se Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id*. A *sua sponte* dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

**ANALYSIS**

Although Plaintiff's Amended Complaint asserts two causes of action, Defendant Wermers is named only in the first. Plaintiff's first claim alleges that Defendant Wermers, acting in concert

with other officers, recklessly disregarded Plaintiff's safety by removing Plaintiff's lower bunk restriction while knowing of Plaintiff's "mental and physical state." (Docket #13 at 2-4.) Plaintiff argues that Dr. Wermers improperly relied on the Americans with Disabilities Act and the *Montez v. Owens* class action (92-cv-00870-JLK-OES (D. Colo.)) to justify the removal of the lower bed restriction because "[the] ADA has noting (sic) to do with medical care." (*Id*. at 2) According to Plaintiff, this conduct amounts to cruel and unusual punishment in violation of the Eighth Amendment.

Defendant Wermers argues that Plaintiff has failed to state a claim under the Eighth Amendment, either for Defendant's own conduct or for any action taken by Defendant in concert with other officers. In addition, Dr. Wermers asserts that he is entitled to qualified immunity.

Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). When a defendant pleads qualified immunity as a defense, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). Once the defense of qualified immunity is asserted, the plaintiff must demonstrate both that the defendant violated his constitutional rights, and that the right was clearly established at the time of the alleged unlawful activity. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). In determining whether Plaintiff has met his burden of establishing that his constitutional rights were both clearly established and violated by Defendant Wermers, the Court construes the facts in the light most favorable to Plaintiff, who is the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378

(2007).

As the Supreme Court held in *Pearson*, the Court has discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). Within this discretion, the Court will examine first whether Plaintiff has demonstrated on supported facts that Defendant Wermers violated his constitutional rights either individually or while acting in concert with other officers. If Plaintiff has established sufficient facts to plausibly support a constitutional violation under either theory of liability, the Court will then proceed to determine whether the violation was clearly established at the time of the alleged conduct.

**I. Defendant's Conduct as an Individual**

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras,* 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle,* 429 U.S. at 105.

The Eighth Amendment test for deliberate indifference contains both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual

Punishment Clause." *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006)). The subjective component is met if the plaintiff demonstrates that a defendant "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). In the Tenth Circuit, a plaintiff must show that "a prison official [] disregard[ed] the specific risk of harm claimed by the prisoner, not a more general risk." *Whiteman v. El Paso Criminal Justice Ctr.*, No.10-cv-02430-WYD-KLM, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011) (citing *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009)).

Beginning with the objective component, Plaintiff alleges that he has suffered permanent physical and psychological injuries as a result of falling off of the top bunk, including emotional distress, numbness on the left side of his body, and scarring on the left side of his face. (Dockets ##13 at 4, 49 at 2.) Defendant Wermers does not contest the extent of Plaintiff's injuries; however, the Court finds that Plaintiff has alleged sufficient harm, at this juncture of the proceedings, to satisfy the objective component of the deliberate indifference inquiry. *See Whiteman*, 2011 WL 2610202, at *3 (finding that a plaintiff who fell down the stairs while medicated suffered sufficiently serious injuries to support an Eighth Amendment claim).

Turning to the subjective component, Plaintiff must plausibly demonstrate that Defendant knew Plaintiff faced a substantial risk of falling off of the top bunk and disregarded that specific risk by removing Plaintiff's lower bunk restriction. *See id*. at *4; see also *Martinez,* 563 F.3d at 1089. Defendant Wermers asserts that Plaintiff was not medically entitled to a lower bunk restriction, and

that his decision to remove the restriction was an informed medical judgment. Dr. Wermers further argues that Plaintiff's mere disagreement with this decision is not sufficient to support an Eighth Amendment claim.

Generally, the Tenth Circuit has extended a certain degree of deference to medical judgments pertaining to an inmate's treatment or diagnosis. *See Braxton v. Wyandotte County Sheriff's Dep't*, 205 F. App'x 791, 793 (10th Cir. 2006) ("inadvertent failure to provide adequate medical care or negligence in diagnosing or treating a medical condition does not violate the Eighth Amendment"); *see also Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006) (finding that "decisions as to whether to consult a specialist or undertake additional medical testing" are medical judgments which do not violate the Eighth Amendment absent a showing of "extraordinary neglect."). However, the Court is not persuaded that Defendant Wermers' decision to remove Plaintiff's lower bunk restriction is a medical judgment *per se*, as it has little to do with the diagnosis or treatment of a particular medical condition.

Although the Court declines to classify Defendant's Wermer's decision as a "medical judgment," the Court does not find that Plaintiff has alleged or plausibly demonstrated that Defendant made the decision with knowledge of a substantial risk that Plaintiff would suffer the specific harm alleged in this lawsuit. Plaintiff alleges that Defendant knew of his "mental and physical state" and, more generally, that "that the conduct [was] dangerous." (Docket #13 at 1,3.) However, Plaintiff has not alleged that Dr. Wermers knew Plaintiff was substantially at risk of falling from the top bunk, nor has Plaintiff provided any facts that would render such allegation plausible. Plaintiff does not allege that he had fallen before, that his condition or medications increased his likelihood of falling, or that Defendant had any other reason to know a fall was likely.

Morever, the facts Plaintiff has provided indicate that Plaintiff's bottom bunk restriction was initially implemented at Plaintiff's request because Plaintiff had difficulty using the ladder. (*See* docket #1 at 15.) Thus, it is not clear from Plaintiff's pleadings that Dr. Wermers knew Plaintiff faced a substantial risk of falling from the top bunk and disregarded that risk by removing the lower bunk restriction. *See Callahan*, 471 F.3d at 1159.

Although Plaintiff has alleged sufficient injury to meet the objective component of the deliberate indifference test, Plaintiff has failed to satisfy the subjective component of the test. Therefore, the Court recommends the District Court dismiss Plaintiff's first claim for conduct attributed solely to Defendant Wermers.

## II. Defendant's Action in Concert

Plaintiff's first claim also asserts that "[t]he officers actions were in concert." The Court construes this statement liberally as a second theory of liability inclusive of Defendant Wermers. Beyond alleging that Dr. Wermers and Defendant McBride took and kept Plaintiff off the bottom bunk, Plaintiff provides no other details regarding concerted action.

To state a valid a claim of conspiracy, a plaintiff must make two showings. First, a plaintiff must "allege specific facts showing agreement and concerted action among [defendants.]" *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Second, a plaintiff must show that defendants acted with the purpose of "depriv[ing] [the] plaintiff of a constitutional or federally protected right." *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990). "Conclusory allegations of conspiracy are insufficient to state a valid §1983 claim." *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989).

As a threshold matter, Plaintiff does not allege specific facts showing that Defendants

reached an agreement or acted in concert. Additionally, Plaintiff does not allege, nor does the Court find, that Plaintiff had a federally protected right to remain on the bottom bunk. Indeed, Plaintiff resists any suggestion that his bunk restriction implicated the ADA or *Montez*. (*See* docket #13 at 2.) Morever, as described above, the Court does not find that Plaintiff had any constitutionally protected right to remain on the lower bunk. Thus, even if Defendant Wermers acted with others to remove the lower bunk restriction, such action does not support a claim for conspiracy because it does not deprive Plaintiff of any constitutional or federally protected right. *See Dixon*, 898 F.2d at 1449 n.6.

Returning to qualified immunity inquiry, the Court finds that Plaintiff has failed to show that Defendant Wermers violated his Eighth Amendment rights either individually or while acting with other Defendants. At a minimum, Plaintiff has failed to show a clearly established constitutional right to remain on the lower bunk. Thus, the Court finds that Dr. Wermers is entitled to qualified immunity for all claims asserted against him in this lawsuit.

**III. Leave to Amend**

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989). As such, in this jurisdiction, the Court typically does not dismiss a claim under Rule 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10.

In this case, Plaintiff's pleadings have already been amended. In his September 13, 2011 Order, Magistrate Judge Shaffer instructed Plaintiff to file an amended complaint explaining "what

each defendant did to him []; when the defendant did it; how the defendant's actions harmed him []; and what specific legal right the plaintiff believes the defendant violated." (Docket #11.) In this way, Plaintiff has once been provided with "notice and opportunity to amend." *See Bellmon*, 935 F.2d at 1109-10.

In determining whether additional leave to amend would cure the deficiencies of Plaintiff's claim against Defendant Wermers, the Court considers both the information provided in and omitted from Plaintiff's Amended Complaint. While Plaintiff recounts with impressive detail the dates on which he received medication, transferred facilities, moved to the top bunk, and ultimately fell, he fails to include any information regarding Dr. Wermers' knowledge of the relevant risk. Mere knowledge of Plaintiff's "mental and physical state" or even of knowledge of a general danger to Plaintiff's safety is not enough to survive dismissal, *see Whiteman*, 2011 WL 2610202, at *4, and does not persuade the Court that further evidence exists or is likely to be acquired. *See Iqbal*, 129 S. Ct. at 1950 (noting that the pleading requirements of Rule 8 "[do] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." ) Consequently, because it is unlikely that an additional opportunity to amend may cure the current defects in the Plaintiff's Amended Complaint, the Court recommends that the Plaintiff be denied another opportunity to amend his pleading in this matter.

## CONCLUSION

Considering Plaintiff's Amended Complaint and Defendant Wermers' Motion to Dismiss, the Court finds that Plaintiff has failed to plausibly allege a constitutional violation against Defendant Wermers. Accordingly, the Court finds that Defendant Wermers is entitled to qualified immunity, and RECOMMENDS that the District Court **grant** Defendant Dr. Joseph Wermers's

Motion to Dismiss [filed March 9, 2012; docket #45] and dismiss Plaintiff's claim against Defendant Wermers accordingly.

Respectfully submitted at Denver, Colorado, this 21st day of May, 2012.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge